UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAMES S.,[1]

               Plaintiff,

      v.

SOCIAL SECURITY ADMINISTRATION, et al.,

               Defendants.

Case No. 25-cv-00539-ASK

**ORDER RE SUMMARY JUDGMENT**

Re: Dkt. Nos. 14, 17

Plaintiff James S. moves for summary judgment to reverse the Social Security Administration's denial of his claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq. Dkt. 14. Defendant Commissioner requests that the Court affirm the denial, or, in the alternative, remand. Dkt. 17. Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument. The Court **DENIES** James S.'s motion for summary judgment and **AFFIRMS** the Commissioner's decision because substantial evidence supports the Commissioner's denial of James S.'s application for disability benefits.

## I.    BACKGROUND

James S. filed an application for disability benefits on September 20, 2021, alleging that his disability began on August 15, 2019. The Commissioner denied that application initially on February 8, 2022, and upon reconsideration on December 9, 2022. James S. then filed a written request for a hearing on December 27, 2022, which was held telephonically before Administrative Law Judge ("ALJ") Lisa Lunsford on January 8, 2024.

---

[1] The Court uses only Plaintiff's first name and last initial to mitigate privacy concerns, as suggested by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

On January 31, 2024, the ALJ concluded that "the claimant has not been under a disability within the meaning of the Social Security Act from August 15, 2019, through the date of this decision." AR 34. Though the ALJ found that James S. suffers "bipolar disorder; anxiety disorder; major depressive disorder; mild cognitive impairment; narcissistic personality disorder; and cannabis use disorder[,]" she determined that James S.

> **has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: can perform simple tasks with occasional changes in work routine; can have no interaction with the public and occasional interaction with co-workers and supervisors; and can do no fast-paced work requiring a specific production rate, such as assembly-line work or work that requires hourly quotas.**

AR 38 (emphasis in original).

On March 20, 2024, James S. requested review of the ALJ's decision. The Commissioner denied James S.'s request for review on October 21, 2024. AR 6. On January 15, 2025, James S. brought this action for judicial review of the Commissioner's denial of his application for disability benefits pursuant to 42 U.S.C. § 405(g). Dkt. 1.

James S. now moves for summary judgment on the grounds that the ALJ failed to (1) fully and fairly develop the record, (2) give proper weight to the medical opinions of James S.'s treating physicians, (3) give proper weight to other medical and nonmedical testimony, and (4) support her conclusion that James S. is able to engage in substantial gainful work with substantial evidence. Dkt. 14 at 2. The Commissioner requests that the Court affirm the denial. Dkt. 17.

## II.    DISCUSSION

Though 42 U.S.C. § 405(g) empowers the Court to review the Commissioner's decision to deny disability benefits, "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). The Court will only disturb the Commissioner's decision if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id.* Substantial means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up). Under this standard, which is "not high," the Court considers the existing administrative record and asks "whether it

United States District Court
Northern District of California

2

United States District Court
Northern District of California

contains 'sufficient evidence' to support the agency's factual determinations." *Id.* at 102 (cleaned up).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted). If "the evidence can reasonably support either affirming or reversing a decision," the Court must defer to the ALJ's decision. *Id.* (citation omitted).

Even if the ALJ commits legal error, the Court must uphold the ALJ's decision if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492 (cleaned up). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id.* (cleaned up).

A.     **Disability Analysis**

A claimant is "disabled" under the Social Security Act (1) "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A)-(B); *see Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012). The ALJ uses a five-step analysis to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *id.* § 416.920(a)(4) (same standard for supplemental security income). The claimant bears the burden of proof at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

3

United States District Court
Northern District of California

At step one, the ALJ determines if the claimant is presently engaged in a "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (cleaned up). Here, the ALJ determined that James S. "**ha[d] not engaged in substantial gainful activity since August 15, 2019, the alleged onset date[.]**" AR 34 (emphasis in original).

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that James S. had "**the following severe impairments: bipolar disorder; anxiety disorder; major depressive disorder; mild cognitive impairment; narcissistic personality disorder; and cannabis use disorder**[.]" AR 35 (emphasis in original).

At step three, the ALJ evaluates whether the claimant has an impairment or combination of impairments that meets or equals an impairment in the "Listing of Impairments" (the "listings"). *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity." *Id.* § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." *Id.* § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that James S. "**d[id] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]**" AR 35 (emphasis in original).

If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses

4

the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do despite their limitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to perform past relevant work, defined as "work that [the claimant has] done within the past five years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). If, based on the RFC, the ALJ determines that the claimant can perform past relevant work, the claimant is not disabled. *Id.* § 404.1520(f). Here, the ALJ determined James S. has the RFC to "**perform simple tasks with occasional changes in work routine**" with "**occasional interaction with co-workers and supervisors[.]**" AR 37 (emphasis in original). The ALJ also determined that James S. "**ha[d] no past relevant work**" and, as such, "**[t]ransferability of job skills is not an issue[.]**" AR 44 (emphasis in original).

At step five, the burden shifts to the Social Security Administration to prove that "the claimant can perform a significant number of other jobs in the national economy." *Ford*, 950 F.3d at 1149 (cleaned up). Here, the ALJ determined that James S. could sustain work as an Order Selector, Housekeeper, or Marking Clerk. AR 45. Accordingly, the ALJ determined that James S. was not disabled. AR 45 ("A finding of 'not disabled' is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.").

James S. asks the Court to reverse the ALJ's determination that he is not disabled under the Social Security Act on the grounds that the ALJ failed to (1) fully and fairly develop the record; (2) give proper weight to the medical opinions of Dr. Apostle, Nurse Harris-Muchell, and Social Worker Coe; (3) give proper weight to his and his mother's lay testimony; and (4) support her conclusion that James S. is able to engage in substantial gainful work with substantial evidence. The Court addresses each of these arguments in turn.

### 1.    Full and Fairly Developed Record

James. S. argues that his "own treating physician documents" were not considered by the ALJ, and that he "was not asked to provide [his] own medical records." Dkt. No. 14 at 6. On the contrary, the ALJ informed James S. in writing on October 3, 2023, that he

> must inform us about or submit **all** evidence known to you that relates to whether or not you are blind or disabled. Your representative must help you submit information and evidence to us. **If you know about**

**or have more evidence, such as recent medical records, reports, or evaluations, you must inform me about it or give it to me no later than 5 business days before the date of your hearing. If you miss this deadline, I may not consider the evidence when I decide your case.**

AR 284 (emphasis in original). Moreover, the ALJ's decision explains that James S. "submitted or informed the Administrative Law Judge about all written evidence at least five business days before the date of the [his] scheduled hearing[.]" AR 32. The transcript of the January 8, 2024, hearing confirms that James S. submitted records "on December 29th, 2023, from Sausal Creek, [In-Home Support Services ("IHSS")] and Epic Care." AR 58.

James S. further claims that he has "been diagnosed with ADHD since the age of three" and "was unable to provide the medical records for this condition before the administrative hearing." Dkt. 14 at 4-5. But the ALJ's decision explains that James S.'s "mental health treatment records do not contain any diagnosis of ADHD during the relevant period in this case. While it appears in Dr. Dhawan's treatment records, Dr. Dhawan notes it by history only and does not adequately document clinical signs of the diagnosis." AR 35. Further, because James S. withdrew his claim for child insurance benefits, the ADHD diagnosis that he received at age three is irrelevant to the determination of James S.'s disability claim. AR 32, 35, 58-59 (withdrawing disabled adult child benefit claim).

James S. fails to demonstrate that the administrative record was ambiguous or inadequate. "[A]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford*, 950 F.3d at 1156. This duty was not triggered here, "[g]iven that the ALJ had years of [James S.'s] mental health records and multiple opinions from" various medical professionals to inform her well-reasoned decision. *Id*.

### 2.    Medical Opinions

James S. argues that the ALJ failed to give proper weight to the medical opinions of Dr. Apostle, Nurse Harris-Muchell, and Social Worker Coe. Dkt. 14 at 8. In opposition, the Commissioner insists that James S. has forfeited his challenge to the ALJ's assessment of these medical opinions by failing to acknowledge the ALJ's reasons for discounting them. Dkt. 17 at 5.

6

A claimant "forfeit[s] the argument that the ALJ did not provide sufficient reasons for discounting the opinions of the healthcare professionals" where the claimant "fail[s] to acknowledge" the ALJ's "reasons for discounting the various healthcare professionals' opinions[.]" *Nadon v. Bisignano*, 145 F.4th 1133, 1138 (9th Cir. 2025). Here, James S. has failed to acknowledge the ALJ's explicit reasons for discounting the medical opinions of Dr. Apostle, Nurse Harris-Muchell, and Social Worker Coe, and has "therefore also failed to challenge the ALJ's reliance on them[.]" *Id*. However, even if James S. had addressed the ALJ's reasons for discrediting the medical opinions, his challenge would have failed because substantial evidence supports the ALJ's reasoning.

### a.   Dr. Apostle

On December 8, 2022, Dr. Demetry Apostle conducted a 2.5-hour telephonic psychological evaluation of James S., after which Dr. Apostle diagnosed James S. with "moderate to severe major depressive disorder, mild cannabis use disorder, and narcissistic personality disorder[.]" AR 42; *see* AR 739. The ALJ observed that "[s]ome of Dr. Apostle's mental status observations of the claimant dramatically differ from those of other examiners and treatment providers, as he described the claimant as agitated, frantic, and tense, with circumstantial and tangential speech[.]" AR 42; *see* AR 727; *see generally* AR 723-43. The ALJ found Dr. Apostle's opinion to be unpersuasive because

> [i]t is supported only by a one time telephone appointment, and the assertions of marked levels of impairment are not supported by the clinical findings: attention/concentration was mildly impaired [AR 728-29]; memory was mildly impaired [AR 729]; Beck Depression Inventory showed only moderate symptoms [AR 730]; Beck Anxiety Inventory showed mild symptoms [AR 730]; and personality pathology was described as moderate [AR 734]. The assertion of marked impairments in interacting with the public and coworkers is also not supported by the exam, or by the claimant's treatment records, which fail to document such extremely challenged social functioning and in contrast note improved interaction with family members. A marked impairment in completing a workday is also not supported by his ability to complete the 2.5 hour phone exam without noted significant difficulty and the claimant's own admission he spends 4-8 hours per day playing video games. The multitude of marked impairments is also not consistent with the subsequent treatment records which document he was doing fairly well, seeing his children, and job hunting, and do not document marked impairments interacting with others. [*See, e.g.*, AR 752]. Thus, even

7

if Dr. Apostle's conclusions were considered to be supported by the exam, the claimant's medical records do not establish that this marked level of impairment lasted for 12 months.

AR 42. Dr. Apostle's opinion also conflicted with other medical opinions, including Dr. Aparna Dixit's "mildly persuasive" opinion that James S. "has no work related limitations[,]" Dr. Natasha Choudri's "somewhat persuasive" conclusion that James S. "had mild limitations[,]" and Dr. Michael Cremerius's "persuasive" opinion that James S. "has moderate impairments in mental functioning and is limited to simple routine work with no public interaction, limited interaction with coworkers and supervisors, and no fast packed work with strict production quotas[.]" AR 40-41. Based on this substantial evidence, the ALJ reasonably concluded that "Dr. Apostle's opinion overall is unpersuasive." AR 42.

### b.    Nurse Harris-Muchell

In October 2023, Nurse Carolyn Harris-Muchell signed an IHSS form indicating that James S. "has left food cooking and walked away, is unable to do laundry or shop, and needs reminders for daily activities and transportation to appointments[.]" AR 42; *see* AR 830. However, the ALJ found Nurse Harris-Muchell's opinion to be "unpersuasive because they are unsupported by her treatment records and rely primarily upon the subjective input from [James S.] and his mother at the time they were applying for IHSS[.]" AR 43. That James S.'s mother "helps him with tasks and does chores for him does not clearly establish he is incapable of such chores and tasks." AR 43. The ALJ found Nurse Harris-Muchell's opinion that James S. "requires assistance even with basic activities of daily living" to be inconsistent with James S.'s prior statements. AR 43; *see* AR 695, 701, 712, 727. Substantial evidence thus supported the ALJ's reasonable conclusion that Nurse Harris-Muchell's opinion was unpersuasive. *See, e.g.*, *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings.").

### c.    Social Worker Coe

In December 2023, Social Worker Ericka Coe "asserted that all but two of James S.'s work-related mental abilities are markedly impaired, and he would be off task 50% of the time and

8

absent more than 4 days per month[.]" AR 43; *see* AR 855-56. But the ALJ observed that Ms. Coe only offered

> two reasons to support her conclusions, including that he becomes distracted easily and quickly, and he has difficulty getting out of bed often. The latter reason is not supported by her direct knowledge and thus based only on subjective statements of the claimant and/or his mother. The former reason related to distractability is not supported by any treatment notes of her own or by her clinic's treatment notes, which do not indicate such a severe impairment and in contrast note normal memory and attention during multiple appointments[.]

AR 43; *see* AR 755, 762, 770, 780, 787, 790, 796, 803, 808, 810, 816, 820. Because Ms. Coe's opinion was inconsistent with the majority of treatment records, the ALJ discounted Ms. Coe's opinion. AR 43; *see* AR 38. Substantial evidence, including treatment records "showing improvement in symptoms and functioning and medication effectiveness[,]" supports the ALJ's reasonable interpretation of Ms. Coe's assertions. AR 43; *see* AR 597-99.

### 3. Nonmedical Testimony

James S. claims "[t]here is no evidence in the record that my mother's testimony about my limitations is inac[c]urate or untrustworthy, yet the ALJ discounts any medical reports that rely on my mother's statements." Dkt. 14 at 9.

Under the Social Security Act, the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources using the requirements" for medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(d); *see Hudnall v. Dudek*, No. 23-3727, 2025 WL 1379101, at *5 (9th Cir. May 13, 2025) (Bumatay, J., concurring) ("Read in context, § 404.1520c(d) means that ALJs are *not required* to articulate how they consider nonmedical sources as they are required to do for medical sources." (emphasis in original)); *see also Kennedy v. O'Malley*, No. 22-35866, 2024 WL 242992, at *2 (9th Cir. Jan. 23, 2024) ("[A]n ALJ is not required to articulate how she considered evidence from nonmedical sources under the new regulations." (cleaned up)).

Nevertheless, the ALJ articulated her consideration of James S.'s mother's reports by explaining that "[t]he third-party functional reports submitted by [James S.'s] mother are largely a repetition of [James S.'s] allegations and similarly unsupported by and inconsistent with [James

S.'s] treatment records . . . Her statements regarding his inability to perform many basic daily activities are also inconsistent with his prior reports to examiners[.]" AR 43; *see* AR 456-64, 498-505. Accordingly, James S.'s argument that the ALJ failed to accord the proper weight to his mother's testimony fails.

Additionally, James S. argues that the ALJ should not have considered his prior "misrepresentations" about "being a 'quick learner' and a 'good student', who graduated high school at the age of 15" with Spanish fluency and a background in Mandarin and Japanese because he "sometimes ha[s] delusions which cause these misrepresentations." Dkt. 14 at 5. But the ALJ adequately balanced these self-reported facts with Dr. Choudri's observation that James S. "was unable to perform serial sevens" but, according to Dr. Dixit, "could perform serial threes[.]" AR 36; *see* AR 696, 701. And, despite James S.'s insistence to the contrary, the ALJ also acknowledged and incorporated James S.'s changing reports of paranoid thinking in her decision. *See* AR 38 ("The claimant denied any paranoia"); AR 39 ("The claimant did not think he needed treatment and denied many symptoms although admitted some isolation and paranoia."); AR 40 ("He denied paranoia and reported clearer thinking"). The ALJ thus reasonably incorporated and considered James S.'s self-reports.

### 4.    Substantial Gainful Work

James S. challenges the ALJ's RFC finding on the grounds that the "RFC did not account for my documented difficulty with sustained concentration, interaction with others, and adaptation to workplace changes. . . . The ALJ also erred by failing to consider the cumulative and interactive effects of my multiple mental impairments." Dkt. 14 at 10.

As to James S.'s first basis, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citation omitted). For instance, an RFC limited to "simple, routine, repetitive, sedentary work, requiring no interaction with the public" sufficiently incorporates pace and concentration deficiencies. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1171, 1173-76 (9th Cir. 2008).

Here, the ALJ limited James S.'s RFC to "**simple tasks with occasional changes in work**

United States District Court
Northern District of California

**routine**" and "**occasional interaction with co-workers and supervisors**" that do not require "**interaction with the public**" or "**fast-paced work [with] a specific production rate[.]**" AR 37 (emphasis in original). The ALJ's RFC formulation carefully considered the entire record and "took into account those limitations for which there was record support[.]" *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *see* AR 37-44. The RFC incorporates Dr. Cremerius's "persuasive" medical opinion that James S. "is limited to simple routine work with no public interaction, limited interaction with coworkers and supervisors, and no fast packed work with strict production quotas[.]" AR 41; *see* AR 128, 130, 134-37, 141, 155, 157-58, 166-68, 181-82. The RFC also incorporates:

- Dr. Dixit's "mildly persuasive" conclusion that James S. has "no work related limitations." AR 40.
- Dr. Choudri's "somewhat persuasive" conclusion that James S. has "mild limitations in: maintaining concentration, attention and persistence; adapting to the usual stresses of work; maintaining a schedule and attendance; and completing a normal workday." AR 40-41.
- Dr. Catlin's "somewhat persuasive" conclusion that James S. has a moderate impairment in understanding, remembering, and applying information; a mild impairment in interacting with others; a mild impairment in concentrating, persisting, or maintaining pace; a moderate impairment in adapting and managing himself; and a marked impairment in responding to demands, adapting to changes, and managing symptoms. AR 41-42.

Accordingly, the ALJ's RFC finding was sufficiently supported by substantial evidence and adequately incorporates James S.'s documented difficulties.

James S.'s argument that the ALJ's RFC finding did not "consider the cumulative and interactive effects of [his] multiple mental impairments[,]" Dkt. 14 at 10, ignores the ALJ's explicit consideration of the combined effect of James S.'s limitations. AR 35-37. The ALJ found that James S.'s mental impairments do not "meet or medically equal any of the mental listings" or "cause at least two 'marked' limitations or one 'extreme' limitation[.]" AR 36. The ALJ arrived at

11

this conclusion after considering James S.'s limitations "in four broad areas of mental functioning" including: "a moderate limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, a moderate limitation in concentrating, persisting, or maintaining pace, and a moderate limitation in adapting or managing oneself." AR 36. Moreover, the ALJ considered James S.'s consistent denials of "suicidal ideation, homicidal ideation, and auditory and visual hallucinations." AR 36. The ALJ's RFC formulation thus properly considered "the combined effect of all of [James S.'s] impairments on [his] ability to function, without regard to whether each alone was sufficiently severe." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citations omitted).

* * *

The Court finds that substantial evidence supports the factual determinations underlying the Commissioner's denial of James S.'s disability benefits. Accordingly, James S.'s motion for summary judgment is **DENIED**.

## III.    CONCLUSION

For the foregoing reasons, the Court **DENIES** James S.'s motion for summary judgment and **AFFIRMS** the Commissioner's final decision.

**IT IS SO ORDERED.**

Dated: March 31, 2026

_____
AJAY KRISHNAN
United States Magistrate Judge